UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRET BODIN, ET AL.                                    CIVIL ACTION

VERSUS                                               NO: 25-329

CITY OF NEW ORLEANS                                  SECTION: "A" (5)

## ORDER AND REASONS

The following motions are before the Court: **Motion to Dismiss (Rec. Doc. 25)** filed by the defendant, the City of New Orleans ("the City"); **Motion for Summary Judgment (Rec. Doc. 28)** filed by the plaintiffs, Bret Bodin, Darian Morgan, Brad Newell, Michael Rosas, Mid-City Mike Rentals, LLC, and Airbnb, Inc. Both motions are opposed. The motions, submitted for consideration on June 25, 2025, are before the Court on the briefs without oral argument.[1]

This case presents yet another legal challenge to the City's regulation of transient lodging, more commonly referred to as short-term rentals ("STR"), in its residential neighborhoods. Bret Bodin, Brad Newell, Darian Morgan, Michael Rosas, and Mid-City Mike Rentals, LLC are the owners of property located in residential areas of New

_____

[1] The plaintiffs have requested oral argument on their motion for summary judgment. (Rec. Doc. 29, Request for Oral Argument). The Court is not persuaded that oral argument would be helpful or add anything to the Court's understanding of the plaintiffs' position. The plaintiffs' amended complaint is 87 pages in length. The Court has allowed the plaintiffs to exceed the page limit imposed by the Local Rules on their memorandum in support of summary judgment (47 pages), their opposition memorandum to the City's motion to dismiss (38 pages), and their reply memorandum in support of summary judgment (21 pages).

Orleans (referred to collectively as "the Host Plaintiffs"). The Host Plaintiffs seek to rent out their properties on a short-term basis (less than 30 days) through commercial online booking platforms such as Airbnb, Expedia, and Vrbo, but are precluded from doing so in various ways by the City's current STR regulatory scheme. The Host Plaintiffs believe that the City's STR regulatory scheme has stripped them of rights protected by the federal and state constitutions so they have filed this lawsuit to vindicate those rights.

Airbnb, Inc. ("Airbnb") is also a plaintiff in the case. Airbnb is a San Francisco-based corporation that operates the largest and most prominent of the online booking platforms. Airbnb challenges the validity of a 2024 local ordinance that sets forth certain requirements for STR platforms that do business in the City.

The City refers to the plaintiffs' 87-page amended complaint as "sprawling," (Rec. Doc. 25-1, Memorandum in Support at 2), which is a fitting term. The amended complaint attempts to allege 11 Counts, all of which the City moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiffs, on the other hand, move for judgment as a matter of law in their favor.

## I.    Background

Prior to 2017, the New Orleans City Code did not allow a residential property owner to offer to rent for monetary compensation a living accommodation in the City for fewer than 30 days (or fewer than 60 days in the French Quarter). In 2017, following a study by the New Orleans City Planning Commission ("the CPC"), the New Orleans City Council ("the Council") established an initial framework for permitting STRs in New

Orleans. Given the subsequent proliferation of STRs in the City's residential neighborhoods, and certain unintended negative effects being experienced in certain neighborhoods based on that proliferation (noise and trash nuisances, diminished quality of life, loss of neighborhood character), the Council asked the CPC to reevaluate the City's STR permitting scheme. Based on the CPC's findings, the Council enacted a new permitting scheme in August 2019 ("2019 Ordinance").

**2019 Ordinance.** A group of property owners ("the *Hignell-Stark* plaintiffs") sued the City in this district challenging the 2019 Ordinance and the non-renewal of their STR permits. (Civil Action 19-13773 c/w 22-2991 c/w 23-5000). The *Hignell-Stark* plaintiffs raised a litany of constitutional challenges to the 2019 permitting scheme, most notably a Takings Clause claim and a Dormant Commerce Clause claim. Judge Ivan L.R. Lemelle of the United States District Court for the Eastern District of Louisiana, granted partial relief to the City, *Hignell v. City of New Orleans*, 476 F. Supp. 3d 369 (E.D. La. 2020); *Hignell v. City of New Orleans*, No. 19-13773, 2021 WL 2886213 (E.D. La. July 9, 2021), and the parties appealed. The Fifth Circuit's published decision in *Hignell-Stark* contains holdings that have important implications for the case before this Court. For now it suffices to say that the Fifth Circuit rejected the *Hignell-Stark* plaintiffs' Takings Clause claim but found merit to their Dormant Commerce Clause claim. *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 325 (5th Cir. 2022). The Takings Clause claim was unsuccessful because the plaintiffs had no property interest in having their STR permits

renewed.[2] *Id.* at 324-25. The Dormant Commerce Clause claim was successful because the 2019 Ordinance imposed a residency requirement that discriminated against out-of-state property owners.[3] *Id.* at 325. As part of its analysis of the Dormant Commerce Clause claim, the Fifth Circuit offered what it considered to be "reasonable alternatives" to the discriminatory residency requirement that the City could adopt to address the legitimate local concerns that had prompted the City to adopt a residency requirement in the first place. *Hignell-Stark*, 46 F.4th at 328-29.

**2023 Ordinance.**[4] The City explains that the 2023 Ordinance was designed to address the negative effects caused by the rapid proliferation of STRs in residential neighborhoods after they were first legalized in 2017. The 2023 regulatory scheme represents the culmination of extensive revisions to the City's STR permitting scheme over the last six years. And of course the 2023 Ordinance contained revisions to rectify the portion of the City's STR regulatory scheme that the Fifth Circuit had found offensive to the Dormant Commerce Clause in *Hignell-Stark*. Discrimination against out-of-state

---

[2] To be clear, the plaintiffs in *Hignell-Stark* were property owners that had previously obtained an STR permit but were unable to renew those permits under the 2019 Ordinance. The *Hignell-Stark* plaintiffs' Takings Clause claim was based on the contention that they had a protected property interest (for Takings Clause purposes) in their STR permits, a contention that the Fifth Circuit soundly rejected. As will be seen below, the Host Plaintiffs' Takings Clause claim is not based on the same contention that was raised in *Hignell-Stark*.

[3] The 2019 Ordinance included a "residency requirement" such that no person could obtain a permit to operate an STR unless the property was also "the owner's primary residence." This requirement precluded any out-of-state property owner from operating an STR, which discriminated against out-of-state property owners.

[4] The 2023 Ordinance, which the Court refers to in the singular, actually consists of two ordinances Nos. 29381 M.C.S. and 29382 M.C.S.

commerce is no longer a problem with the revised ordinance.

Not surprisingly, when the City revised its STR regulations in 2023 in response to the *Hignell-Stark* decision, it implemented the "reasonable alternatives" to the residency requirement that the Fifth Circuit had offered and discussed in its written opinion. 46 F.4th at 328-29. The City viewed those alternatives as recommendations from the Fifth Circuit—recommendations that the appellate court would not have offered if the City could not validly and legally implement them. Among other provisions, the 2023 Ordinance 1) caps the number of STR permits allowed in residential areas to one per City block (awarded via a lottery system), 2) limits ownership of an STR to natural persons only, 3) allows property owners to possess no more than one STR permit, 4) provides a framework for the lawful inspection of properties used as STRs, 5) requires an operator to be on the premises while a property is being used as an STR, and 6) provides increased penalties for violations of the 2023 Ordinance.

The *Hignell-Stark* plaintiffs amended their complaint (the case was still pending in the district court when the 2023 Ordinance went into effect) to challenge the 2023 Ordinance, alleging further violations of the Constitution. Judge Lemelle upheld a single challenge to the 2023 Ordinance, which was the restriction on usufructuaries and trust beneficiaries who seek to obtain STR permits. *Hignell v. City of New Orleans*, No. 19-13773, 2024 WL 838217 (E.D. La. Feb. 28, 2024). The *Hignell-Stark* plaintiffs appealed Judge Lemelle's ruling and the appeal remains pending before the Fifth Circuit.

**2024 Ordinance.** In October 2024 the City enacted additional regulations, this

time setting forth requirements for STR platforms (like Airbnb) who conduct business in

New Orleans. The 2024 Ordinance (§ 26-622 Code of the City of New Orleans) requires

platforms to verify that its host-users possess a valid STR permit and thus are renting the

property legally before collecting a booking fee for facilitating the transaction. The 2024

Ordinance also requires platforms to provide the City with a monthly report containing

information regarding their booking transactions and the properties its users are booking

as STRs in order to demonstrate compliance with the law. The City advises that the 2024

Ordinance was modeled after a similar ordinance in New York City. Airbnb challenged

the New York City ordinance in federal court and lost. *Airbnb, Inc. v. New York City

Mayor's Office of Spec. Enf.,* No. 154865, 2023 WL 5044029 (N.Y. Sup. Ct. Aug. 8,

2023). Airbnb did not appeal that decision.[5]

The claims brought in the plaintiffs' amended complaint can be divided into two

broad categories. The <u>first</u> category comprises constitutional claims brought by the Host

Plaintiffs challenging the 2023 Ordinance:

---

[5] The *Airbnb* decision from the New York Supreme Court that the City brandishes is not particularly helpful because the legal theories relied upon in that case were not the same as those being raised in this lawsuit. Moreover, as Airbnb has pointed out, it has obtained some level of success in other lawsuits that did involve the same legal theories as those that Airbnb has raised in this lawsuit. *See, e.g., Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467 (S.D.N.Y. 2019).

The City advises that all major STR platforms, including Airbnb, have been working with the City to implement the new verification and reporting requirements as the necessary computer systems are being developed and tested. The City has already cooperated to delay the effective date of the new verification and reporting requirements and the City has committed to provide further extensions if there is a demonstrated technical need. (Rec. Doc. 25-1, Memorandum in Support at 8).

### 1. Bret Bodin and Brad Newell

The Bodin/Newell home includes an upstairs loft, located within the main house where Mr. Bodin and Mr. Newell live full-time, as well as a carriage house in their backyard. Between 2015 and the passage of the 2023 Ordinance, Bodin and Newell obtained a series of STR permits for the loft and the carriage house, and they had regular bookings. Once those licenses expired and the 2023 Ordinance went into effect, Bodin and Newell were no longer able to list *both* the loft and the carriage house (each requires its own permit) because under the 2023 Ordinance an owner cannot possess more than one STR permit, and because there can only be one STR permit issued per city block.

### 2. Darian Morgan

Mr. Morgan's Mid-City home has two bedrooms and two bathrooms, which due to their layout make the home well-suited for a partial-home STR. In January 2022 Morgan acquired an STR permit to rent out the front portion of his home on a short-term basis, and he had regular bookings. When his license expired and the 2023 Ordinance went into effect, Morgan was unable to obtain another STR permit because he lost the STR lottery to another homeowner on his block. Even aside from the unfavorable lottery outcome, Morgan was also shutout because there was already another STR on his block and the 2023 Ordinance only allows one permit per city block.

### 3. Michael Rosas

Mr. Rosas owns a triplex in New Orleans consisting of a 3-bed 2-bath unit on the top floor, a 3-bed 2-bath unit on the bottom floor, and a studio unit also on the bottom floor. Rosas lives on the top floor, and from 2019 until the 2023 Ordinance went into effect, he rented out on a short-term basis both downstairs units on pretty much a continuous basis. But under the 2023 Ordinance he can only use one of the downstairs units as an STR because an owner cannot possess more than one STR permit, and because there can only be one STR permit issued per city block (each downstairs unit requires its own permit).

### 4. Mid-City Mike Rentals, LLC

Mid-City Mike Rentals, LLC purchased a duplex in New Orleans in December 2024. The duplex consists of two 2-bedroom 1-bath units. Another property owner on the same block has already obtained an STR permit. Mid-City Mike cannot obtain an STR permit both because it is barred from doing so as a corporate entity (under the 2023 Ordinance only natural persons can obtain a permit), and because of the one-per-square block limitation.

Summing up the Host Plaintiffs' factual allegations, each of them could derive significant income from renting out either portions of or the whole of their residential properties on a short-term basis (less than 30 days), but the 2023 Ordinance prevents them from doing so. The Host Plaintiffs allege that the 2023 Ordinance violates the Takings Clause of the Fifth Amendment (Counts 1 and 2), Due Process (Count 4), the

Fourteenth Amendment (Count 5), the Fourth Amendment (Count 7), and the Louisiana State Constitution (Counts 3 and 6). To bolster their constitutional claims, the Host Plaintiffs ask this district court to recognize two new fundamental rights, and then proceed to argue that the City's STR regulatory scheme strips them of those newly-recognized fundamental rights.

The second category of claims brought in the plaintiffs' amended complaint comprises challenges to the 2024 Ordinance by Airbnb insofar as the 2024 Ordinance sets forth requirements for STR platforms that seek to do business in New Orleans. Airbnb is the only STR rental platform challenging the City's STR regulations. Airbnb alleges that various aspects of the 2024 Ordinance violate the Fourth Amendment (Count 7), the Stored Communications Act (Count 8), the Communications Decency Act (Count 9), the First Amendment (Count 10), and the Takings Clause (Count 11).

The City moves to dismiss all of the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiffs, on the other hand, move for judgment as a matter of law in their favor.[6]

The merits of the parties' competing positions are addressed below.

## II.    Discussion

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most

---

[6] The plaintiffs have never suggested that any aspect of the City's motion to dismiss is premature given that discovery has not begun. And given that the plaintiffs have moved for summary judgment without any discovery having taken place, they implicitly acknowledge that no aspect of the City's motion to dismiss should be denied as premature so that discovery can proceed.

favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*,
627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th
Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for
relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949
(2009)). "A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations,
unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess,
Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual
allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

In the context of a Rule 12(b)(6) motion to dismiss the Court must accept all
factual allegations in the complaint as true and draw all reasonable inferences in the
plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing
*Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*,
416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)).
However, the foregoing tenet is inapplicable to legal conclusions. *Iqbal*, 129 S. Ct. at
1949. Thread-bare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S.
544, 555 (2007)). Any ambiguities in the current controlling substantive law must be
resolved in the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (citing
*Burchett v. Cargill, Inc.,* 48 F.3d 173, 176 (5th Cir.1995)).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v.*

*Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### Count 1— Per Se Takings Claim

In Count 1 of the amended complaint, the Host Plaintiffs allege that the 2023 Ordinance constitutes a per se taking of their properties.

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." *Tyler v. Hennepin Cty.*, 598 U.S. 631, 637 (2023) (citing U.S. Const. amend. V). The plain language of the Takings Clause "requires the payment of compensation whenever the government acquires private property for a public purpose." *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (quoting *Tahoe-Sierra Preserv. Council, Inc. v. Tahoe Reg. Planning Agen.*, 535 U.S. 302, 321 (2002)).

The protections of the Takings Clause are at their zenith when the government effects a per se or categorical taking, which is characterized by acquiring physical possession of private property for a public use. When the government takes physical possession of an interest in private property for public use, it has a categorical duty to compensate the property owner regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof, and regardless of whether the possession is temporary or permanent. *See Tahoe-Sierra*, 535 U.S. at 322. The government is required to compensate the owner for the appropriated share of the property no matter how small. *Id.* Direct, physical appropriation of private property results

in a per se taking, which triggers the application of clear, straightforward rules that mandate just compensation. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021); *Tahoe-Sierra*, 535 U.S. at 322. When a per se or categorical taking occurs, it is immaterial whether the physical appropriation of the property advances a substantial governmental interest or whether it deprives the owner of all economically valuable use of the property—simply, the government must pay for what it takes. *See Tahoe-Sierra*, 535 U.S. at 323.

The Host Plaintiffs allege no facts to support a claim for a per se taking for the simple reason that the 2023 Ordinance does not in any manner involve the City acquiring physical possession of the Host Plaintiffs' properties. The 2023 Ordinance does not oust the Host Plaintiffs from their properties or interfere with their peaceful physical possession of their own properties. The 2023 Ordinance does not force the Host Plaintiffs to allow persons onto their properties whom they did not invite.[7] *See Cedar Point*, 594 U.S. at 149 (finding a per se taking where a government regulation mandated that the property owners allow certain groups onto their properties). Physical possession is the crucial element that distinguishes a per se taking from any other type of takings claim and without it there can be no per se taking.

In fact, the Host Plaintiffs' per se takings claims are grounded in their entirety on

---

[7] A per se taking can be effectuated by a regulation as the *Cedar Point* decision demonstrates. 594 U.S. at 149. But even then there must be a physical occupation or physical invasion of private property tied to the regulation.

legal argument as opposed to actual facts to support such a claim.[8] In lieu of any well-pleaded facts to support a per se takings claim, the Host Plaintiffs have pleaded instead a novel legal theory of their own creation. The Host Plaintiffs argue that the right to lease property and the right to include paying customers on their properties are both fundamental rights, and because the 2023 Ordinance interferes with those fundamental rights, a per se taking has occurred thereby triggering a categorical obligation for the City to compensate the Host Plaintiffs for their losses.[9]

To be sure, and as explained below in the due process section of this Order and Reasons, no fundamental rights are implicated by the City's STR regulations. But questions surrounding fundamental rights are an irrelevant distraction insofar as a per se takings claim is concerned because there is no support in the Supreme Court's takings jurisprudence (or that of any other court) to suggest that a per se taking can occur in the absence of physical acquisition (or ouster) by the government, which the Host Plaintiffs cannot allege. The Host Plaintiffs cannot circumvent this fatal flaw in their per se takings cause of action by inventing their own legal theory that eliminates the most important aspect of a per se taking, *i.e.*, physical acquisition, when a fundamental right is involved.

---

[8] In fact, the Host Plaintiffs' amended complaint for the most part consists of legal argument and not factual content. The Host Plaintiffs' legal arguments and legal assertions do not become well-pleaded facts (that must be accepted as true) simply because they are included in a pleading.

[9] While the Host Plaintiffs ostensibly seek just compensation in the way of monetary payment, they concede that an injunction against the City prohibiting enforcement of the 2023 Ordinance would suffice just as well. (Amended Complaint ¶ 132).

Such a cause of action simply does not exist.

In sum, the Host Plaintiffs' cause of action for a per se taking is without merit and fails on the pleadings. The City's motion to dismiss Count 1 is granted. The motion for summary judgment filed by the Host Plaintiffs is denied as to Count 1.

### Count 2— Regulatory Takings Claim

In Count 2 of the amended complaint, the Host Plaintiffs allege that the 2023 Ordinance constitutes a regulatory taking of their properties.

For over a century the Supreme Court has recognized that even in the absence of a physical appropriation of property, the government may effect a non-categorical regulatory taking via the imposition of regulatory burdens on private property. While property may be regulated to a certain extent, if a use restriction "goes too far" it will be recognized as a taking. *Murr*, 582 U.S. at 393 (citing *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). The per se or categorical rules that apply to physical takings are not applicable to a claim for a regulatory taking. *Tahoe-Sierra*, 535 U.S. at 323. Unlike the categorical rules that apply with per se (physical) takings, the analysis for determining when regulations that prohibit a property owner from making certain uses of private property rise to the level of a regulatory taking is more complex. *Tahoe-Sierra*, 535 U.S. at 322 & n.17. This area of the law has been characterized by "ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances." *Murr*, 582 U.S. at 393 (quoting *Tahoe-Sierra*, 535 U.S. at 322).

For a regulatory taking neither physical appropriation nor a public use is a

necessary component. *Tahoe-Sierra*, 535 U.S. at 326. Two guidelines are relevant for determining when government regulation is so onerous that it constitutes a taking. First, a regulation that denies all economically beneficial and productive use of land will constitute a taking that requires compensation. *Murr*, 582 U.S. at 393 (citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)). Second, when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking may still be found based on "a complex of factors" including the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action. *Murr*, 582 U.S. at 393 (citing *Palazzolo*, 533 U.S. at 617). These factors derive from the test applied by the Supreme Court in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

The 2023 Ordinance is a use restriction that limits the Host Plaintiffs' ability to derive income from using their residential properties as short-term rental or lodging businesses. So the first question that must be asked under the regulatory takings analysis is whether the 2023 Ordinance deprives the Host Plaintiffs of all economically productive use of their properties. That question clearly must be answered in the negative because the 2023 Ordinance notwithstanding, the Host Plaintiffs remain free to offer their properties for rent on a non-STR basis and they can continue to use their properties as their own private residences if they choose to do so.

Given that the 2023 Ordinance has not stripped the Host Plaintiffs of all economically beneficial and productive use of their properties but merely impedes the

properties' use as an STR, their regulatory takings claims are governed by the flexible analysis provided by the Supreme Court in *Penn Central Transportation Co. v. New York City*, *supra*, which is geared toward determining whether the 2023 Ordinance goes "too far."[10]

There is little doubt that the Host Plaintiffs satisfy the first two prongs of the *Penn Central* analysis. The Host Plaintiffs have adequately alleged economic harm from the 2023 Ordinance. The Court accepts as true the Host Plaintiffs' allegation that they could garner greater economic benefits from their residential properties by operating them as STRs.

Next, the Host Plaintiffs have adequately alleged that the 2023 Ordinance interferes with their investment-backed expectations. Each of the Host Plaintiffs has alleged that he either acquired his property in anticipation of being able to use it as an STR or renovated his property to make it more attractive in the STR market.

The Court is persuaded, however, that the Host Plaintiffs do not allege facts sufficient to satisfy the third *Penn Central* factor, which focuses on the character of the governmental action involved. The Host Plaintiffs allege in support of the third *Penn*

---

[10] In their opposition to the City's motion to dismiss, the Host Plaintiffs accuse the City of misunderstanding the nature of their regulatory takings claims, and essentially failing to raise an adequate challenge to the Count 2 regulatory takings cause of action. (Rec. Doc. 38, Opposition at 16). Admittedly, the City does seem to have fallen victim to the Host Plaintiffs' convoluted pleading style when drafting its motion to dismiss, but that is of no moment. The Court is not restricted to what the City argued in its motion to dismiss when it questioned the validity of the Host Plaintiffs' claims. The governing law, not the City's motion to dismiss, dictates what the plaintiffs must plead to state a claim.

*Central* factor that the 2023 Ordinance effected a physical invasion of their property because fundamental rights are involved. (Amended Complaint ¶ 137). In other words, the Host Plaintiffs rely on their failed per se takings legal argument to support the third factor of the *Penn Central* analysis. Of course, if a per se taking were involved there would be no need to conduct the *Penn Central* analysis. The nature of the governmental action involved is a use restriction pure and simple.

An STR is a lodging business conducted in an online marketplace. Operating an STR is undisputedly a commercial activity and conducting that activity out of a residence or out of one's own home does not change that characterization. The City's ability to regulate commercial activity in residential neighborhoods is substantial. *See Murr*, 582 at 399. The Fifth Circuit has already recognized that the City's interest in preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character, are legitimate local purposes. *Hignell-Stark*, 46 F.4th at 328. The Host Plaintiffs may dispute whether the 2023 Ordinance is effective in serving those purposes but the City's contention that its legitimate goals would be furthered by the 2023 Ordinance is not unfounded. Nothing suggests that the 2023 Ordinance is not reasonably related to the promotion of the general welfare of the community so a diminution in property value alone (if that has in fact occurred) cannot as a matter of law establish a taking. *Penn Central*, 438 U.S. at 131.

And while the Host Plaintiffs attempt to characterize themselves as singled out victims of the 2023 Ordinance, the Host Plaintiffs are not being forced alone to bear the

public burdens that should be borne by the public as a whole. *Murr*, 582 U.S. at 394. The 2023 Ordinance applies to all residential property owners so the Host Plaintiffs are not being forced alone to bear the burdens of the 2023 Ordinance, even though they feel the burdens of the 2023 Ordinance more than residential property owners who currently have no interest in operating an STR. Legislation designed to promote the general welfare commonly burdens some more than others but that does not mean that a taking has occurred. *Penn Central*, 438 U.S. at 133. Just as in *Penn Central*, the nature of the governmental action involved here is an interference that results from a regulation that "adjust[s] the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124.

Furthermore, the Host Plaintiffs' position is contrary to established Supreme Court precedent. The 2023 Ordinance interferes only with the Host Plaintiffs' ability to rent out their properties on a short-term basis and it is on this narrow property interest that the Host Plaintiffs are laser focused. No other property interest is affected. But the Supreme Court has made clear that a property owner cannot so narrowly define the property right at issue in order to support the contention that some right has been completely abrogated. *Tahoe-Sierra*, 535 U.S. at 327 & n. 23. The Host Plaintiffs' have circularly defined the property interest taken in terms of the regulation that they are challenging in order to make it resemble a categorical taking. *Id.* at 331. But *Penn Central* admonishes that in regulatory takings cases the court must focus on "the parcel as a whole." *Tahoe-Sierra*, 535 U.S. at 331 (citing *Penn Central*, 438 U.S. at 130-31). To the extent that any

portion of property is taken that portion is always taken in its entirety but that does not render it a categorical taking. *Murr*, 582 U.S. at 395 (citing *Concrete Pipe & Prods. of Calif., Inc. v. Constr. Laborers Pen. Trust*, 508 U.S. 602, 644 (1993)).

In sum, the 2023 Ordinance is a reasonable land-use restriction on commercial activity in a residential neighborhood. Reasonable land-use regulations do not result in a compensable taking. *Murr*, 582 U.S. at 400 (citing *Palazzolo*, 533 U.S. at 627; *Mahon*, 260 U.S. at 413).

The Host Plaintiffs' cause of action for a regulatory taking fails on the pleadings. The City's motion to dismiss Count 2 is granted. The motion for summary judgment filed by the Host Plaintiffs is denied as to Count 2.

### Count 3—Inverse Condemnation

In Count 3 of the amended complaint, the Host Plaintiffs allege that the 2023 Ordinance constitutes a taking under Louisiana law. Count 3 of the amended complaint consists almost entirely of legal argument.

The Louisiana Constitution provides that "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner . . . ." La. Const. art. I, § 4(B)(1). A three-prong analysis applies in determining whether a claimant is entitled to compensation—the court must 1) determine if a recognized species of property right has been affected, 2) decide whether the property has been taken or damaged in a constitutional sense, and 3) determine whether the taking or damaging is for a public purpose under Article I, section 4 of the

state constitution. *Avenal v. State of Louisiana*, 886 So. 2d 1085, 1104 (La. 2004).

The Court has already explained why the 2023 Ordinance is a reasonable exercise of police power. The state constitution expressly states that property rights are subject to the reasonable exercise of police power. La. Const. art. I, § 4(A).

The Host Plaintiffs' cause of action for inverse condemnation fails on the pleadings. The City's motion to dismiss Count 3 is granted. The motion for summary judgment filed by the Host Plaintiffs is denied as to Count 3.

**Count 4—Due Process**

In Count 4 of the amended complaint, the Host Plaintiffs allege that the 2023 Ordinance violates their substantive due process rights under the federal and state constitutions.

The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of "life, liberty, or property, without due process of law . . . ." U.S. Const. amend XIV, § 1. Similarly, the Louisiana Constitution provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. 1, § 2.

Generally, liberty interests protected by the Fifth Amendment are considered under one of two standards: strict scrutiny and rational-basis review. If a right is fundamental, strict scrutiny applies. *Franklin v. United States*, 49 F.4th 429, 435–36 (5th Cir. 2022) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720–21, (1997)). To survive strict scrutiny, a governmental restriction of a fundamental right must be "narrowly

tailored to serve a compelling state interest." *Id.* (citing *Glucksberg,* 521 U.S. at 721). The level of scrutiny, which is the default for substantive due process claims that do not implicate a fundamental right, requires that the regulation be rationally related to a legitimate government interest. *Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 561 (5th Cir. 2017) (citing *FM Props. Oper. Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996)). Rational basis review is a "notoriously deferential" standard. *Id.* at 561-62.

When land-use restrictions are challenged as a violation of substantive due process the regulation is sustainable against a due process challenge if there exists "any conceivable rational basis" for the restriction. *FM Props.*, 93 F.3d at 174 (citing *So. Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir. 1974)). Importantly, the interest the government asserts to show rationality need not be the actual or proven interest as long as there is a connection between the policy and a "conceivable" interest. *Reyes*, 861 F.3d at 563 (citing *FM Props.*, 93 F.3d at 175). The true or actual purpose of the policy (the actual purpose that may have motivated its proponents) is irrelevant for rational basis analysis. *FM Props.*, 93 F.3d at 174. If the relationship is "at least debatable" there is no substantive due process violation. *Reyes*, 861 F.3d at 563. The political process may continue to fine tune the regulation but that is not the Due Process Clause's role to play. *Reyes*, 861 F.3d at 566.

The due process guarantee under state law does not differ from the federal guarantee. *Newell-Davis v. Phillips*, No. 22-30166, 2023 WL 1880000, at *6 (5th Cir. Feb. 10, 2023) (unpublished) (citing *Progressive Security Insurance Co. v. Foster*, 711

So. 2d 675, 688 (La. 1998)). Under state law this constitutional guarantee protects against arbitrary and unreasonable actions. *Welch v. United Med. Healthwest-New Orleans L.L.C.*, 403 So. 3d 554, 564 (La. 2025) (citing *Bienvenu v. Defendant 1*, 386 So. 3d 280, 290 (La. 2024); *Progressive Security Insurance Co. v. Foster*, 711 So. 2d 675, 688 (La. 1998); *Babineaux v. Judiciary Comm'n*, 341 So.2d 396, 400 (La. 1976)). Where only social or economic regulations are involved, restriction of a right need only bear a rational relationship to a legitimate government interest to survive due process scrutiny. *Id.* (citing *Bienvenu*, 386 So.3d at 290; *Med Express Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 684 So. 2d 359, 365 (La. 1996)).

Recognizing that they cannot defeat the 2023 Ordinance under deferential rational basis review, the Host Plaintiffs seek to trigger strict scrutiny by arguing for the recognition of two new fundamental rights: the right to rent out residential property on a short-term basis, and the right to include others, in this case paying lodgers, on residential property.

The Host Plaintiffs seek to elevate the right to rent out residential property on a short term basis to the rarefied air occupied by fundamental rights by arguing that the right to lease property short-term is a deeply rooted tradition dating back to the 19th Century in the residential neighborhoods of New Orleans. But in order for an unenumerated right to be considered fundamental for purposes of protection under the federal constitution, that right or liberty must be deeply rooted in this Nation's history and tradition. *Dept. of State v. Munoz*, 602 U.S. 899, 910 (2024) (citing *Glucksberg*, 521 U.S.

at 720–21). Even if the Host Plaintiffs could establish that the renting of houses or parts of houses in residential neighborhoods on a short-term basis to transient lodgers was a long-standing tradition in some New Orleans neighborhoods, that does nothing to establish that the practice is deeply rooted in the Nation's history and tradition (or even the rest of Louisiana for that matter). The Supreme Court has never recognized a localized fundamental right for purposes of protection under federal due process guarantees based solely on a local tradition. In fact, the Supreme Court has been particularly suspect of arguments to recognize new fundamental rights. *See Munoz*, 49 F.4th at 909. There is no fundamental right to rent out residential property on a short-term basis.

As for the right to include others (paying transient lodgers) on residential property, the Host Plaintiffs have either misread or misunderstood the cases upon which they rely for their fundamental rights argument. The Host Plaintiffs' argument that the right to include others on their property (which the 2023 Ordinance does not prevent them from doing) is a fundamental right is grounded on the holding in *Cedar Point Nursery v. Hassid*, which recognized that the right to exclude others from private property is a *fundamental element* of property ownership. 594 U.S. at 149-50. That decision never suggested or hinted that the right to exclude is a fundamental right (the term is not even mentioned in the opinion). So the Host Plaintiffs' reliance on *Cedar Point*'s discussion of the right to exclude to claim that the right to include (the term is not mentioned in the opinion) is a fundamental right is particularly misplaced.

The Host Plaintiffs' reliance on *Sheetz v. County of El Dorado*, 601 U.S. 267, 279 (2024), is likewise perplexing because that case held only that the same takings analysis applies to legislative acts as to permitting acts. The *Sheetz* decision does nothing to advance the Host Plaintiffs' arguments. Similarly, the Host Plaintiffs' reliance on *State v. City Savings Bank & Trust Co.*, 127 So. 890 (La. 1930), for the proposition that leasing property is a fundamental right is likewise misplaced. That decision merely recognizes that the right to lease property is an incident of ownership. No one disputes that the right to lease property is an interest protected by due process but elevating it to a fundamental right is an entirely different matter. The 2023 Ordinance is subject to rational basis review because it does not interfere with a fundamental right.

Applying rational basis review, the Host Plaintiffs' due process claims cannot survive the City's motion to dismiss. The City's stated objectives for the 2023 Ordinance are improving affordable housing, leveling the playing field among lodging providers, and reducing the disruption in neighborhoods and enhancing the quality of life. Those are legitimate governmental goals. Whether these are in fact the "true or actual" motivations behind the 2023 Ordinance is immaterial.[11]

Deferential rational basis review requires only that the 2023 Ordinance be rationally related to a legitimate government interest such as those cited above. It is.

---

[11] The Host Plaintiffs believe that the City's real reason for limiting STRs is to benefit the hotel industry. Besides the fact that the City can legitimately take measures to promote the hotel industry, under rational basis review the City's "real" reason for the 2023 Ordinance is immaterial.

Limiting the number of STRs in any given neighborhood will plausibly address at the very least the nuisance problems that the City sought to address. The Host Plaintiffs argue that the factual allegations in the amended complaint establish that there is no relationship between the content of the ordinances and their stated purposes. (Rec. Doc. 38, Opposition at 20). But as the Court has already noted, these are not factual allegations but only arguments and contentions that do not require any deference as a factual allegation. That the Host Plaintiffs believe that the City's approach will not work or that something more to their liking would have been more beneficial is insufficient to overcome rational basis review. The Host Plaintiffs' legal challenge does not place the burden on the City to prove the efficacy of its measures. Even if the Host Plaintiffs could show that the efficacy of the 2023 Ordinance is debatable, as a matter of law that does not establish a substantive due process violation.

The Host Plaintiffs' cause of action for a due process violation fails on the pleadings. The City's motion to dismiss Count 4 is granted. The motion for summary judgment filed by the Host Plaintiffs is denied as to Count 4.

### Count 5—Void for Vagueness (Due Process)

In Count 5 of the amended complaint, the Host Plaintiffs allege that the 2023 Ordinance violates their due process rights under the federal and state constitutions because it is unconstitutionally vague.

The Host Plaintiffs allege that portions of the 2023 Ordinance are so vague that persons of ordinary intelligence are unable to discern what conduct is prohibited.

(Amended Complaint ¶ 157). For example, among other vague requirements, the 2023 Ordinances requires hosts to ensure that all rooms are "adequately lighted" without providing any standard by which to evaluate compliance. Ordinance No. 29381 M.C.S., Sec. 26-618(a)(6)(b). And they require that hosts ensure the operator be able to "resolve complaints" within one hour of being contacted by a neighbor, guest, or the City, without any indication of what constitutes a complaint or adequate resolution. Sec. 26-618(a)(10)(a). (Amended Complaint ¶ 158).

The 2023 Ordinance also provides that "excessive loud sound," defined as "any noise . . . that is louder than a conversational level"; "offensive odors"; "litter"; or "any effect that otherwise unreasonably interferes with neighbors' quiet enjoyment of their properties" may be grounds for revocation or suspension of a license, yet there are no standards by which to evaluate compliance with these requirements. Sec. 26-618(b)(11). (Amended Complaint ¶ 159).

Further, the Host Plaintiffs allege that the 2023 Ordinance's delegation of the decision to suspend or revoke a short-term rental license to hearing officers is unconstitutionally vague and indefinite. The 2023 Ordinance grants unlimited discretion over revocation and suspension decisions. And these revocation decisions carry on for five years from the determination date and extend not just to the alleged offender, but to any future homeowner of the property for which a license was revoked. Apart from a non-exhaustive list of situations in which revocation is mandatory, the 2023 Ordinance provides no limitation on a hearing officer's discretion. (Amended Complaint ¶ 160). The

Host Plaintiffs also complain that the lack of limitations on guidance for the hearing officer's discretion encourages arbitrary and discriminatory enforcement. (Amended Complaint ¶ 161).

A law is unconstitutionally vague if it fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited or is so indefinite that it allows arbitrary and discriminatory enforcement. *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023) (citing *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 224-25 (5th Cir. 2009)). A regulation is void for vagueness when it is so unclear that people "of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

Since a void-for-vagueness challenge is a due process claim the plaintiff must allege that he was deprived of a constitutionally-protected property or liberty interest. *McClelland*, 63 F.4th at 1013 (citing *Longoria ex rel. M.L. v. San Benito Indep. Consol Sch. Dist.*, 942 F.3d 258, 270 (5th Cir. 2019)). The first inquiry with every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty. *Id.* at 1014 (citing *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017)).

A law that does not reach constitutionally protected conduct may nevertheless be challenged on its face as unduly vague in violation of due process. *Village of Hoffman Est. v. Flipside, Hoffman Est., Inc.*, 455 U.S. 489, 497 (1982). But to succeed in a facial challenge the plaintiff must demonstrate that the law is impermissibly vague in all of its applications. *Id.*

Further, the degree of vagueness that the Constitution tolerates depends in part on the nature of the enactment. *Hoffman Estates*, 455 U.S. at 498. Economic regulation is generally subject to a less strict vagueness test. *Id.* (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972)). Enactments with civil rather than criminal penalties enjoy greater tolerance because the consequences of imprecision are qualitatively less severe. *Id.* (citing *Barenblatt v. United States*, 360 U.S. 109, 137 (1959) (Black, J., dissenting); *Winters v. New York*, 333 U.S. 507, 515 (1948)).

Only Newell, Bodin, and Rosas ("the Permit Holders") *potentially* have standing to raise this challenge because it only applies to those persons who possess STR permits. The other Host Plaintiffs who do not hold STR permits cannot raise a challenge based on vagueness.[12] Although the Permit Holders allege that their vagueness challenge is both as applied and facial (Amended Complaint ¶ 163), none of the Permit Holders allege that any of the allegedly vague portions of the 2023 Ordinance have been enforced against them (or that they have been threatened with enforcement). Thus, they have no as-applied challenge to raise. That means that the Permit Holders are actually bringing a

---

[12] Even as to the Permit Holders, they do not allege facts sufficient to support standing. They do not allege that the City has ever attempted to enforce the allegedly vague sections of the 2023 Ordinance against them, they do not allege that they have been threatened with enforcement, and they do not allege facts to suggest any type of concrete and actual or imminent injury sufficient to support an Article III case or controversy which is necessary to standing. *National Press Photo. Assoc. v. McCraw*, 90 F.4th 770, 781-82 (5th Cir. 2024). Likewise, there are no facts alleged to suggest that any threatened future injury is certainly impending or that there is a substantial risk that the harm will occur. *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014)).

pre-enforcement facial vagueness challenge to the noted portions of the 2023 Ordinance.[13]

Even aside from the standing problems, the Permit Holders do not allege facts sufficient to support a facial attack on the 2023 Ordinance for unconstitutional vagueness. First of all, while the Fifth Circuit recognized that the Permit Holders' interest in their STR licenses entitles them to the protections of *procedural* due process, that does not mean that the licenses themselves constitute the plaintiffs' property for other constitutional claims like a takings claim or a substantive due process claim, which is the type of due process claim that the plaintiffs have raised. *See Hignell-Stark*, 46 F.4th at 324-25.

Second, given that the Permit Holders are raising a facial attack on the 2023 Ordinance, they must be able to establish that the regulations are impermissibly vague in all of their applications, and this they cannot do. This is particularly true given that the 2023 Ordinance is civil in nature and governs what is undisputedly commercial conduct.

The Host Plaintiffs' cause of action for a vagueness due process violation fails on the pleadings. The City's motion to dismiss Count 5 is granted. The motion for summary judgment filed by the Host Plaintiffs is denied as to Count 5.

_____

[13] If the Permit Holders were to prevail on the vagueness challenge, it would only mean that certain portions of the 2023 Ordinance would be unenforceable. It would not entitle the Host Plaintiffs to what they really want which is to have the Court enjoin the 2023 Ordinance altogether so that they can operate STRs unfettered by any regulations. *See Cartesian Co. v. Div. of Admin. Law Ethics & Adjudicatory Bd. Panel*, 371 So. 3d 1041, 1062 (La. 2023) (striking only the facially vague portions of the challenged statute and specifically noting that the rest of the statute remained in force and effect).

### Count 6—Impermissible Regulation of Private, Civil Relationships

In Count 6 of the amended complaint, the Host Plaintiffs and Airbnb allege that the 2023 Ordinance and the 2024 Ordinance go beyond the City's lawful zoning authority by regulating private, civil relationships between Airbnb and the Host Plaintiffs, and between the Host Plaintiffs and their guests, in violation of Article VI, § 9(A) of the Constitution of the State of Louisiana. (Amended Complaint ¶ 169). Airbnb and the Host Plaintiffs allege that the 2024 Ordinance impermissibly regulates their relationship by requiring Airbnb to block certain listings posted by hosts and prohibiting Airbnb from processing certain transactions. (*Id.* ¶ 167). The Host Plaintiffs allege that the 2023 Ordinance regulates the relationship between them and their guests by prohibiting hosts (those without STR permits) from hosting short-term guests and imposing arbitrary and burdensome requirements on the host-guest relationship. (*Id.* ¶ 168). Airbnb and the Host Plaintiffs argue that only the state legislature would have the authority to regulate the relationship between Airbnb and its hosts, and between hosts and guests, and the legislature has not authorized municipalities to act in that area.

The plaintiffs provide examples of how they believe that the City's STR regulations violate the state constitution. The Host Plaintiffs allege that prohibiting homeowners who want to rent out their properties on a short-term basis from doing so, in other words requiring a permit, is unconstitutional. For those hosts who do obtain a permit, the 2023 Ordinance requires that an operator reside on the property and be available during all periods of guest occupancy. The 2023 Ordinance even dictates rules

for what kind of sheets must cover the mattress.

Article VI, § 9(A) of the Louisiana Constitution, entitled Limitations of Local Governmental Subdivisions, states that "[n]o local governmental subdivision shall . . . except as provided by law, enact an ordinance governing private or civil relationships." Airbnb and the Host Plaintiffs allege that their relationship is a private, civil relationship. (Amended Complaint ¶ 166).

The City stresses that Article VI, § 9(A) is expressly limited by the phrase "except as provided by law," and the ordinances are mere exercises of the City's well-accepted police and zoning powers. The Court agrees with this assertion because the plaintiffs are challenging ordinances that operate in residential neighborhoods where there is no right to run what amounts to a lodging business out of one's property. *See Hignell-Stark*, 46 F.4th at 324. Undoubtedly, it would be a constitutional and permissible exercise of the City's zoning authority for the City to completely prohibit STRs in residential neighborhoods as it did prior to 2017. In other words, the Host Plaintiffs and Airbnb have no constitutional right to conduct their lodging businesses in a residential neighborhood. Thus, it cannot be unconstitutional for the City, in offering the privilege through a permitting system, to impose certain regulations.

This distinguishes this case from *New Orleans Campaign for a Living Wage v. City of New Orleans*, 835 So. 2d 1098 (La. 2002), that the plaintiffs rely so heavily upon. That case involved the employer/employee relationship that the City would have had no authority to prohibit. And in *Javers v. Council of the City of New Orleans*, 351 So. 2d 247

(La. App. 4th Cir. 1977), which the plaintiffs also rely upon, the court never actually concluded that the restrictions at issue violated Article VI, § 9(A) of the state constitution.[14]

The Host Plaintiffs' and Airbnb's cause of action for impermissible regulation of private, civil relationships fails on the pleadings. The City's motion to dismiss Count 6 is granted. The motion for summary judgment filed by the Host Plaintiffs and Airbnb is denied as to Count 6.

### Count 7—Fourth Amendment

In Count 7 of the amended complaint, the Permit Holders and Airbnb allege that the 2024 Ordinance violates the Fourth Amendment prohibition against unreasonable searches and seizures, as well as the Louisiana State Constitution's prohibition against unreasonable searches and seizures.[15] La. Const. art. I, § 5.

---

[14] Although the *Javers* court did quote Article VI, § 9 in its opinion, its constitutional analysis focused on a different part of the Louisiana Constitution, Article VI, § 4. Similarly, in *New Orleans Campaign for a Living Wage*, the court invalidated the ordinance at issue on other grounds and expressly declined to analyze the ordinance under Article VI, § 9(A). 825 So. 2d at 1108.

[15] Airbnb points out that Article 1, § 5 of the Louisiana State Constitution has been recognized for being broader in its protections than the Fourth Amendment. (Rec. Doc. 28-1, Memorandum in Support at 39 n.10). The more correct characterization is that in *some* circumstances the protections of Article 1, § 5 of the Louisiana State Constitution may be broader than the Fourth Amendment yet in other situations there will be no discernible difference between how the two constitutional provisions apply. *State v. Jackson*, 764 So. 2d 64, 71 & n.11 (La. 2000). Airbnb has not established that this case presents one of those scenarios where the protections of the Louisiana State Constitution would be broader than the Fourth Amendment. The Court therefore analyzes Count 7 under Fourth Amendment decisions given that it has not been established that the outcome would differ under Louisiana law.

STR rental platforms such as Airbnb cannot operate in the City of New Orleans without obtaining an STR platform permit. (Sec. 26-621(a)). The 2024 Ordinance imposes certain legal duties on STR platform permit holders, most of which Airbnb contends violate the Fourth Amendment.

First, a rental platform like Airbnb must verify the legal eligibility of each booking transaction that it facilitates through the City's electronic verification system. (Sec. 26-622(a)(4)). Each listing must be verified before any booking transaction is facilitated; each listing must be reverified at least every 30 days of the prior verification in order to facilitate subsequent booking transactions; each listing must be reverified whenever a verifying entity knows or should know that any data used to complete the most recent verification has changed, including but not limited to the host's name and the address of the listing. (Sec. 26-622(a)(4)(i)-(iii)). The STR owner or operator must report the address, operator name, owner name, and other details contained on a permit exactly as it appears on the permit to the platform for the listing to be verified through the City's electronic verification system. (Sec. 26-622(a)(5)).

Airbnb alleges that the 2024 Ordinance raises additional Fourth Amendment problems because it requires platforms to verify hosts' registration status and to remove listings that Airbnb has found to be out of compliance with the Code. (Amended Complaint ¶ 176). Airbnb alleges that these provisions essentially foist the City's enforcement responsibilities onto Airbnb and that this violates the Fourth Amendment. (*Id.*).

Airbnb argues that the verification requirement compels it to disclose to the City data about its users (including the Permit Holders). Airbnb and the Permit Holders argue that they have a Fourth Amendment-protected privacy interest in the data being sought and the City's demand for the data required for verification is not reasonable. Moreover, Airbnb must disclose hosts' names, their addresses, and their listings' unique identifiers when submitting verification requests. (Amended Complaint ¶ 104).

Second, the 2024 Ordinance requires booking platforms like Airbnb to submit a monthly report to the City's Department of Safety and Permits that contains certain information about each of the booking transactions facilitated through the platform during the applicable reporting period: the total number of short-term rental and exempt lodging business properties for which booking transactions were facilitated by the platform during the reporting period; the Universal Resource Locator (URL) links of each STR and exempt lodging business for which booking transactions were facilitated by the platform during the applicable reporting period; the confirmation code verifying eligibility for rental for each booking transaction facilitated by the platform during the applicable reporting period; the number of booking transactions facilitated for each STR during the applicable reporting period; whether each booking transaction facilitated by the platform was for an entire unit or a partial unit; a listing of dates during which the STR was rented as part of a booking transaction facilitated by the platform during the applicable reporting period; the amount of rent paid as part of each booking transaction facilitated by the platform for an STR; and an accounting of taxes and fees collected and paid by the platform as part of

each booking transaction facilitated by the platform. (Sec. 26-622(a)(6)(i)-(ix)).

Airbnb alleges that this data is highly confidential and sensitive because it is non-public information that is important to managing Airbnb's business, which if publicly disclosed would hurt Airbnb's competitive position in seeking hosts to list on its platform. The Permit Holders allege that much of the monthly report data is also confidential and sensitive to them because it is non-public information about the use of their homes, which discloses financial information as well as information about when their homes are vacant during the month.

Airbnb and the Permit Holders argue that the data sought in the monthly report is sensitive and private and considered by Airbnb to constitute highly confidential business records. Airbnb argues that controlling law requires pre-compliance judicial review and that the data sought be reasonably limited in scope. Airbnb and the Permit Holders argue that the 2024 Ordinance fails both requirements.

The 2024 Ordinance also allows the City to obtain additional categories of data upon issuance of a subpoena, including personally identifiable information regarding Airbnb hosts, such as host names and addresses, the dates and durations of short-term rentals or exempt lodging business stays booked through the platform, and the number of guests included in a booking. (Amended Complaint ¶ 106). Airbnb alleges that it has a reasonable expectation of privacy in its business records. (Amended Complaint ¶ 172). The Permit Holders allege that they have a privacy interest in the non-public confidential records maintained by Airbnb concerning their STRs. (Amended Complaint ¶ 174).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[16] U.S. Const. amend. IV. The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (citing *Camara v. Municipal Court of City & County of San Francisco,* 387 U.S. 523, 528 (1967)). When an individual "seeks to preserve something as private," and his expectation of privacy is "one that society is prepared to recognize as reasonable," the Supreme Court has held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause. *Id.* at 304 (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Thus, the threshold question in any Fourth Amendment challenge is whether a "search" has occurred.

In *Carpenter*, the Supreme Court considered whether a search had occurred when the Government obtained cell-site location information (CSLI) from the defendant's wireless carrier in order to prove his guilt in a series burglaries. CSLI is a collection of

---

[16] Article 1, § 5 of the Constitution of the State of Louisiana states:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

time-stamped physical-location information that cell phones automatically transmit to their wireless carriers. The wireless carriers use the information for their own legitimate business purposes. Wireless carriers generally store CSLI for extended periods, and since most criminals (like everyone else) carry cellphones, CSLI is particularly attractive to law enforcement when trying to piece together a suspect's physical movements in relation to a crime. In *Carpenter*, the government had obtained the defendant's CSLI without a warrant supported by probable cause (although pursuant to a valid court order), and the defendant claimed that this violated his Fourth Amendment rights.

In order to determine whether a search had occurred, the Court had to determine whether Carpenter had a legitimate expectation of privacy in the record of his physical movements as captured through CSLI. The government had relied upon the third-party doctrine, which recognizes a reduced expectation of privacy in information knowingly shared with another. The government's theory was that by using a cell phone, Carpenter had knowingly and voluntarily shared the electronic record of his physical movements with his wireless carrier.

The Supreme Court rejected the government's theory and held that the third-party doctrine did not dimmish Carpenter's legitimate expectation of privacy in the CSLI. *Carpenter*, 585 U.S. at 310. The Supreme Court reasoned that most people carry a cell phone and consider it an essential of modern life. *Id.* at 311. The transmission of CSLI is not optional—it will occur and CSLI is an all-encompassing record of the phone holder's whereabouts revealing an intimate window into a person's life, whether familial, political,

professional, religious, or sexual. *Id.* at 311 (citing *United States v. Jones*, 565 U.S. 400, 415 (2012)). Such location records hold for many Americans the "privacies of life." *Carpenter*, 585 U.S. at 311 (citing *Riley v. California*, 134 S. Ct. 2473, 2494-95 (2014)). CSLI is not truly shared as one understands that term thereby lending itself to voluntary exposure. *Id.* at 315. Cell phones transmit CSLI by dint of their operation without any affirmative act by the user. *Id.* Based on the unique nature of cell phone location information, the Court held that the third-party doctrine could not overcome Carpenter's claim to Fourth Amendment protection. *Id.* at 315-16. The Court emphasized that its decision was a narrow one. *Id.* at 316. A suspect may have a legitimate privacy interest in a record held by a third party. *Id.* at 319.

In *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), the Supreme Court considered whether a provision in Los Angeles's city code that compelled hotel operators to maintain certain information about their hotel guests, and then to make that record available to any officer of the local police department for inspection on demand, was valid under the Fourth Amendment. The municipal ordinance required neither consent nor a warrant. The Supreme Court held that the ordinance was facially unconstitutional because it penalized hotel operators for declining to turn over their records to law enforcement on demand without affording them with an opportunity for pre-compliance review. *Id.* at 412, 419.

The Supreme Court began by assuming that the city's principal purpose was to ensure compliance with the record keeping mandated by the city's code and not to

conduct criminal investigations, thus placing the searches authorized by the code into the category of "administrative search." *Id.* at 420 (citing *Camara*, 387 U.S. at 534). Absent consent, in order for an administrative search to be constitutional the subject of the search must be afforded an opportunity to obtain pre-compliance review before a neutral decisionmaker. *Patel*, 576 U.S. at 420 (citing *See v. City of Seattle*, 387 U.S. 541, 545 (1967); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984)). The hotel owners were given no opportunity for pre-compliance review because they were required to produce their business record on demand to any police officer who walked through the door. Absent an opportunity for pre-compliance review the ordinance created an intolerable risk that searches authorized by it would exceed statutory limits or be used as a pretext to harass hotel operators and their guests.[17] *Id.* at 421.

The Court is persuaded that the verification requirement does not violate the Fourth Amendment because the verification requirement does not constitute a search. The Court is persuaded that neither the Permit Holders nor Airbnb can claim a legitimate expectation of privacy in the specific data used for the City's STR verification process.

The City's verification requirement uses the exact same information that a host voluntarily provides to the City to obtain an STR permit. *See* Sec. 26-622(a)(5). The Permit Holders not only turned this information over to the City when they obtained their STR permits, they also voluntarily entered it into the Airbnb system in order to register

---

[17] *Patel* also held that facial challenges under the Fourth Amendment are permissible. 576 U.S. at 415. This holding is important for this case given that the Permit Holders and Airbnb are making a facial Fourth Amendment challenge to the 2024 Ordinance.

their properties on the platform. The Permit Holders cannot claim a legitimate expectation of privacy in information that they have already turned over to the City in order to obtain a permit. *See Carpenter*, 585 U.S. at 308 (citing *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)). Airbnb likewise cannot claim a legitimate expectation of privacy in the pieces of data that the hosts enter into its system for the purpose of satisfying the City's verification requirement. The only similarity between this case and the *Carpenter* case discussed above is that both involve electronic data.

As for the monthly report, the Permit Holders can claim no legitimate expectation of privacy in the data that the report requires because the only piece of required data that is host specific is the URL link which is publicly available information. *See Airbnb, Inc. v. City of Boston*, 386 F. Supp. 3d 113, 124-25 (D. Mass 2019).

With the exception of the verification code, the remainder of the information sought by the City in the monthly report is not publicly available information but rather is information regarding Airbnb's business activities. Airbnb has a legitimate expectation of privacy in its non-public business information. And because the information is specific to Airbnb's business and not the Permit Holders, the question of whether they consented to disclosure when they listed their properties on Airbnb's site is immaterial. Thus, the City's demand for Airbnb's business records is an administrative search for purposes of the Fourth Amendment. Pursuant to *Patel*, in order for the administrative search to be valid, the City's scheme must allow for pre-compliance review before Airbnb can be subjected to punitive measures for non-compliance.

Admittedly, *Patel* was a more egregious situation because it allowed any member of law enforcement to show up any time as many times as he wanted to demand to see the hotel's private business records. In that circumstance the Supreme Court was concerned about abuse of power because law enforcement could use the search to harass business owners or guests. *Patel*, 576 U.S. at 421, 423. Those same concerns are not present with the 2024 Ordinance given the structured nature of the monthly report which does not involve physical invasion of Airbnb's premises or limitless searches on demand. Nonetheless, *Patel* requires a mechanism for pre-compliance review before Airbnb can be compelled to turn over its business records to the City.

The City points to the notice and hearing aspects of the ordinance that are triggered *after* non-compliance (Airbnb disputes that the notice and hearing provisions even apply to platforms but that is immaterial because those provisions do not constitute pre-compliance review) but this is not the type of pre-compliance review that *Patel* demands. Pre-compliance review means that Airbnb must be able to contest the administrative search by the City before a neutral officer *before* it has been cited for failure to comply. The City's scheme does not offer this. As such, as a matter of law, the administrative search effected by the monthly report (except as to the verification code and the host URL) is unreasonable and cannot stand under the Fourth Amendment.

But the data that the City can seek via a subpoena does not suffer from the same infirmity because Airbnb is free to move for a protective order or to quash the subpoena. Therefore the pre-compliance review required by *Patel* is satisfied as to the subpoenaed

information.

In sum, Airbnb's cause of action for a Fourth Amendment violation related to the monthly report has merit. The City's motion to dismiss Count 7 is granted except as to Airbnb's claim that the monthly report mandated by the 2024 Ordinance constitutes an unconstitutional search under the Fourth Amendment.

The motion for summary judgment filed by Airbnb is granted as to Count 7 insofar as the monthly report mandated by the 2024 Ordinance is concerned.

### Count 8—Stored Communications Act

In Count 8 of the amended complaint, Airbnb alleges that the 2024 Ordinance violates the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* ("SCA") because it requires Airbnb to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity" without appropriate legal process. (Amended Complaint ¶ 182). First it requires Airbnb to disclose on a monthly basis with no legal process information such as the number of bookings for each listing in a given month, the dates during which each listing was booked in a given month, and the amount of rent paid for each booking. (Amended Complaint ¶ 182). Under the SCA this type of data can only be disclosed in compliance with a search warrant or court order. (*Id.*).

Second the 2024 Ordinance requires Airbnb to disclose in response to a subpoena information such as dates and duration of each booking and the number of guests included in each booking. (Amended Complaint ¶ 183). This information goes beyond the limited categories of data whose disclosure may be compelled with a

subpoena, instead the SCA demands a search warrant or court order to compel the production of such data. (*Id.*).

The SCA, 18 U.S.C. §§ 2701-2711, governs the privacy of stored electronic communications by internet service providers. *Alexander v. Verizon Wireless Servs.*, LLC, 875 F.3d 243, 249-50 (5th Cir. 2017). Generally the SCA 1) prohibits unauthorized access to certain electronic communications, 2) restricts service providers from voluntarily disclosing the contents of customer communications or records to certain entities and individuals, and 3) permits a governmental entity to compel a service provider to disclose customer communications or records in certain circumstances. *Id.* (citing 18 U.S.C. §§ 2701, 2702, & 2703). One such circumstance allowing disclosure is when the subscriber or customer has consented "to such disclosure." 18 U.S.C. § 2703(c)(1)(C).

The City does not dispute that Airbnb is a covered entity under the SCA. But the City also points out, as have other federal courts considering SCA challenges by Airbnb and similar platforms, that Airbnb requires that all of its customers must accept Airbnb's privacy policy in order to use its platform. The privacy policy requires that customers consent to the disclosure of their data to comply with law. The Permit Holders do not allege that their data would be disclosed without their consent nor could they. Airbnb does not allege lack of consent by its users.

Airbnb's cause of action for a violation of the SCA fails on the pleadings. The City's motion to dismiss Count 8 is granted. The motion for summary judgment filed by

the Host Plaintiffs and Airbnb is denied as to Count 8.

### Count 9—Communications Decency Act

In Count 9 of the amended complaint, Airbnb alleges that the 2024 Ordinance violates the Communications Decency Act, 47 U.S.C. § 230 ("CDA") because the City imposes liability on Airbnb for the content of third-parties (unpermitted hosts who attempt to use the Airbnb platform to operate an STR in New Orleans), thereby treating Airbnb as the publisher or speaker of the information provided by a third-party information content provider. (Amended Complaint ¶ 189). Specifically the 2024 Ordinance's verification requirements assign to Airbnb the responsibility of verifying that hosts are eligible to list their properties. (*Id.*).

The 2024 Ordinance requires Airbnb to verify the registration status of each listing "before any booking transaction is facilitated," and to reverify each listing "at least every 30 days of the prior verification" and whenever Airbnb "knows or should know" that any data relevant to verification has changed, essentially requiring Airbnb to monitor the registration status of all of its New Orleans listings to identify changes that are potentially material to verification. (Amended Complaint ¶ 190). Airbnb alleges that by forcing it to engage in verifying the registration status of a third-party listing, the 2024 Ordinance treats Airbnb as a publisher of third-party content in conflict with § 230. (*Id.*). Airbnb claims that the 2024 Ordinance runs further afoul of § 230 by effectively requiring Airbnb to remove listings when it cannot verify that the host is eligible to list the property. (*Id.*).

Section 230(c)(1) of the Communications Decency Act ("CDA") states that "[n]o

provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 provides immunity when the defendant is 1) the provider or user of an interactive computer service, and 2) treated as the publisher or speaker of third-party content. *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 792-93 (5th Cir. 2024). The central inquiry is whether a claim treats the defendant as a publisher or speaker. *Id.* at 793 (citing *Barnes v. Yahoo, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009)).

To determine whether a claim treats a defendant as a publisher or speaker, courts look to the nature of the claim and the duties the plaintiff seeks to impose on the defendant. *Id.* at 794-95. If the duty imposed would require the defendant to monitor or delete or alter the content published on its website then the CDA is implicated. *Id.* at 795. But in making this determination the court looks to what the duty actually requires the defendant to do. *Id.*

The claimed violation is monitoring and deleting.

Airbnb has not alleged facts sufficient to make the plausible assertion that the 2024 Ordinance treats Airbnb as the publisher or speaker of the content that unlicensed hosts place on its platform. The 2024 Ordinance does not operate against Airbnb's role as a publisher of third-party STR listings but rather against its conduct as a booking agent between users and hosts for which Airbnb earns a fee. *See Airbnb, Inv. v. City of Boston*, 386 F. Supp. 3d 113, 120 (D. Mass. 2019). The 2024 Ordinance does not *require* Airbnb to monitor or delete anything from its website. Airbnb remains free without

penalty to allow as many unlawful STR listings on its website as it chooses to. The 2024 Ordinance simply precludes Airbnb from collecting a fee, in other words profiting, for booking an STR transaction that includes a non-permitted (unlawful) STR. Airbnb may very well determine that for its business model the most effective means of compliance will be to review its website so as to remove unpermitted host listings from its site but the 2024 Ordinance does not compel that action. *See Airbnb, Inv. v. City of Boston*, 386 F. Supp. 3d 113, 121-22 (D. Mass. 2019); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 683 (9th Cir. 2019). Airbnb's allegation that the 2024 Ordinance would require it to monitor and delete content is not a true factual allegation but rather a conclusion. Because the verification requirement of the 2024 Ordinance does not treat Airbnb as the speaker or publisher of third party content, the CDA is not implicated.

In sum, Airbnb's cause of action for a violation of the CDA is without merit and fails on the pleadings. The City's motion to dismiss Count 9 is granted. The motion for summary judgment filed by Airbnb is denied as to Count 9.

### Count 10—First Amendment

In Count 10 of the amended complaint, Airbnb alleges that the 2024 Ordinance violates the First Amendment insofar as the 2024 Ordinance impermissibly compels Airbnb to speak in two ways that it would prefer not to do. First, the monthly disclosure requirement forces Airbnb to create and submit monthly reports divulging sensitive business data. Second, the verification requirement forces Airbnb to provide the City with sensitive information regarding each host. Airbnb does not wish to engage in the speech

that the 2024 Ordinance compels. (Amended Complaint ¶ 200).

Airbnb does not state a claim for relief under the First Amendment because neither the 2024 Ordinance's verification requirement nor its monthly reporting requirement implicate the First Amendment, much less concerns of compelled speech under the First Amendment. The verification requirement and the monthly reporting requirement do not involve any expression or message, they involve only raw data. The 2024 Ordinance does not compel Airbnb to speak publicly a message or expression of ideas with which it does not agree. This stands in stark contrast to *303 Creative, LLC v. Elenis*, 600 U.S. 570 (2023), which Airbnb cites in support of its position.

*X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024), which Airbnb relies upon for support, actually demonstrates why the 2024 Ordinance does not implicate First Amendment concerns. *X Corp.* involved a legislatively mandated semiannual report that required social media companies to produce a report explaining whether and how they define six categories of content that called upon each company to reveal its policy views and opinions about contentiously debated issues, such as what constitutes hate speech or extremism or misinformation, among other topics. *Id.* at 899.

The verification requirement does not compel production of anything, and to the extent that it does, it is information that exactly matches what hosts provide to the City to obtain an STR permit. The verification requirement does not involve expression of any sort of speech.

The monthly report likewise does not involve expression or speech or a message,

compelled or otherwise. The monthly report requires raw data that cannot be construed as any type of expression. It is does not even constitute commercial speech.

In sum, Airbnb's cause of action for a violation of the First Amendment is without merit and fails on the pleadings. The City's motion to dismiss Count 10 is granted. The motion for summary judgment filed by Airbnb is denied as to Count 10.

### Count 11—Takings Clause

In Count 11 Airbnb alleges that City Code § 26-622(a)(2) effects an unconstitutional taking because it requires Airbnb to maintain a commercial general liability insurance policy and to name the City of New Orleans as an additional insured on a primary, noncontributory basis for any liability arising directly or indirectly from the issuance of the license. (Amended Complaint ¶ 206). Airbnb alleges that it has a property interest in its insurance policies and the proceeds from them. (Amended Complaint ¶ 207). Airbnb alleges that by forcing Airbnb to name the City as an additional insured without paying for coverage, the City has effected a taking of Airbnb's property without just compensation. (Amended Complaint ¶¶ 208 & 209).

Airbnb cites no authority for this novel takings claim (the authority cited does not support the theory). Airbnb's argument essentially is that the City is getting something (insurance) for nothing but it does not follow that the City is taking Airbnb's property in a constitutional sense. Airbnb does not dispute that the City can mandate that Airbnb have the insurance in place for its own liability arising out of the platform permit. Having the City named as an additional insured on the policy that Airbnb procures, provides a

benefit to the City that Airbnb is paying for but it does not entail taking an interest in property belonging to Airbnb. Airbnb still owns the policy and it will own any proceeds that it receives on its own behalf. Having the City as an additional insured does not mean that the insurer will pay to the City any policy proceeds that should have been paid to Airbnb.

In sum, Airbnb's cause of action for a violation of the Takings Clause is without merit and fails on the pleadings. The City's motion to dismiss Count 11 is granted. The motion for summary judgment filed by Airbnb is denied as to Count 11.

### III.    Conclusion

The City's motion to dismiss the amended complaint is granted in part and denied in part. The motion is denied as to Airbnb's Fourth Amendment claim that the monthly reporting requirement of the 2024 Ordinance violates the Fourth Amendment. The motion is granted as to all other claims asserted in the amended complaint.

Airbnb's motion for summary judgment is granted as to its Fourth Amendment claim that the monthly reporting requirement of the 2024 Ordinance violates the Fourth Amendment. The motion for summary judgment is denied in all other respects.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 25)** filed by the City of New Orleans is **GRANTED IN PART AND DENIED IN PART** as explained above.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 28)** filed by the plaintiffs is **GRANTED IN PART** as to Airbnb's claim that the 2024 Ordinance's monthly reporting requirement violates the Fourth Amendment. The motion

is **DENIED** in all other respects.

September 5, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE